UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JILL A.-F.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C19-5762 MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by finding her mental impairments non-severe and by discounting her testimony and three medical opinions. (Dkt. # 9.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1960 and has worked as an administrative clerk. AR at 91, 48-49. The ALJ found, between the October 2011 alleged onset date and the December 2016 date last insured, Plaintiff had the severe impairments of degenerative disc disease and chronic pain disorder. *Id.* at 41. The ALJ rejected her claims of severe mental impairments. *Id.* at 41-42. The

ORDER - 1

ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to perform light work, further limited to four hours sitting and four hours standing/walking per day, among other limitations. *Id.* at 43. The ALJ concluded Plaintiff could perform her past work as an administrative clerk as generally performed. AR at 48-49. In the alternative the ALJ found, even if Plaintiff were restricted to sedentary work, she had transferrable work skills enabling her to perform jobs existing in significant numbers in the national economy. *Id.* at 49.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# IV. DISCUSSION

## A. The ALJ Did Not Err in Finding Mental Health Impairments and Headaches Were Not Severe

A claimant can only be found disabled based on severe medically determinable impairments. A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Impairments are severe if they "significantly limit" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The ALJ found Plaintiff had medically determinable mental health impairments of affective disorder and anxiety disorder, but they were non-severe because Plaintiff sought no mental health therapy, she described herself as a "very happy person" in a mental health evaluation, and mental status examinations showed normal findings. AR at 42. The ALJ analyzed the functional implications of any mental health impairments and concluded Plaintiff had no more than mild limitation. *Id.* Plaintiff does not challenge any of this analysis. Instead, Plaintiff relies on the report of Jennifer Irwin, M.D., who diagnosed insomnia and opined Plaintiff would have "difficulty" dealing with usual workplace stress and completing a normal workday and workweek. AR at 725. Dr. Irwin's opinions were discounted by the ALJ, a conclusion Plaintiff does not challenge, and thus do not provide a basis to find mental health impairments caused any significant limitation. *Id.* at 48. The ALJ did not err by finding mental health impairments non-severe.

Plaintiff contends her "constant" headaches were also a severe impairment. (Dkt. # 9 at 5.) The Court concludes there was no harmful error. First, Plaintiff does not identify evidence establishing any medically determinable impairment causing headaches. Second, substantial evidence supports the ALJ's determination that they were not severe. Plaintiff points to treatment notes showing she reported a "headache that won't go away" in November 2011; headaches in

March 2013; and "daily" headaches in February 2014. AR at 476, 456, 446; *see also id.* at 491. But prior, intervening, and subsequent treatment notes generally do not show complaints of headaches. *See id.* at 444-45, 447-55, 457-75, 477-87; *but see id.* at 468, 483. On this record, the ALJ reasonably concluded headaches were not a severe medically determinable impairment.

**B. The ALJ Did Not Err in Discounting Plaintiff's Testimony**

*1. Legal Standard for Evaluating the Plaintiff's Testimony*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether the claimant's medically determinable impairments reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). See also *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

*2. The ALJ Did Not Err in Discounting Plaintiff's Testimony*

Plaintiff testified she cannot work because it would be difficult "to sit long enough, or stand long enough. It's a constant up and down and laying down…." AR at 78. She has constant

pain in her shoulders, arms, and legs. *Id.* at 77, 72. She heats and ices her lower back every two to three hours. *Id.* at 77. She lays down at least four times a day for 20 to 30 minutes. *Id.* at 78-79. Plaintiff can only do household chores such as folding laundry for 20 minutes at a time. *Id.* at 78. She walks no more than the distance to the bathroom. *Id.* at 73-74. Plaintiff testified her medications make her sleepy and inhibit focus. *Id.* at 72-73.

The ALJ discounted Plaintiff's testimony as inconsistent with her activities and not fully supported by the objective medical evidence. AR at 45-47. Because "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," the Court must consider whether inconsistency with activities was a clear and convincing reason to discount Plaintiff's testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

a.  Conflict with Activities

An ALJ may discount a claimant's testimony based on activities that contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff testified she and her husband drove to Arizona, driving four to five hours per day for six days each way. AR at 66. The ALJ found this contradicted her testimony of disabling impairments. *Id.* at 45. Plaintiff argues "there is no indication from the record [she] was in a seated position during the entire time driving." (Dkt. # 9 at 13.) But there is also no indication to the contrary, and the ALJ reasonably inferred Plaintiff was seated during driving. *See Thomas*, 278 F.3d at 954; *see also* AR at 66 (driving limited to 240-260 miles a day "because I can't sit long enough"). Plaintiff argues the trip was only possible with multiple rest breaks. (Dkt. # 9 at 13.) Regardless, the trip shows an ability to sit four to five hours per day on a daily basis. The RFC limits Plaintiff to four hours sitting per day with breaks that are under her control. AR at 43 ("sit for approximately 4

hours per 8 hour workday with normal breaks (i.e., enough variety in the job duties that she could divide up her day by adjusting positions such as sitting and then getting up to get a file)").

The ALJ also cited going to the gym, standing and walking on concrete floors while attending a charity event, and helping her mother clean and organize. AR at 46-47. Plaintiff argues one of the treatment notes about going to the gym references progressing to six minutes on the stationary bike. *Id.* at 427. But the note does not suggest she did nothing else at the gym than six minutes on the bike, and is only one of several treatment notes referencing gym workouts. *Id.* at 418, 423, 429. Plaintiff also argues the ALJ should have questioned her about these activities at the hearing. (Dkt. # 9 at 13.) Plaintiff offers no explanation that would erase the inconsistencies between her activities and her testimony. In these circumstances, it is of no consequence that the ALJ did not ask her for such an explanation.

Inconsistency with Plaintiff's activities was a clear and convincing reason to discount her testimony.

         b.    Lack of Supporting Medical Evidence

The ALJ cited imaging and nerve conduction studies showing only mild to moderate abnormalities; clinical findings of normal gait, generally full muscle strength, and full or only somewhat reduced range of motion; and reports of good pain control. AR at 45-46. Plaintiff argues other medical evidence shows impairments and limitations. (Dkt. # 9 at 8-9.) It does, and accordingly the ALJ included lifting, carrying, sitting, standing, walking, and other restrictions in the RFC. The ALJ did not err in concluding the medical evidence of relatively moderate abnormalities failed to support Plaintiff's testimony of extreme, disabling limitations.

Together with the clear and convincing reason of conflict with activities, lack of support by medical evidence was an additional reason to discount Plaintiff's testimony.

1    The ALJ did not err by discounting Plaintiff's testimony.

**C.    The ALJ Did Not Err in Evaluating the Medical Opinion Evidence**

*1.    Legal Standard*

If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions: "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1502(a), (d), (e). An ALJ may reject the opinion of a non-acceptable medical source, such as a physical therapist in this case, by giving reasons germane to the opinion. *Id.* An ALJ must consider all opinions, including those from non-acceptable medical sources, which may in some cases even outweigh the opinions of acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).

*2.    The ALJ Did Not Err by Discounting the Opinion of Trina Leaf, P.T.*

In June 2013, Plaintiff's treating physical therapist, Ms. Leaf, performed a mini Physical Capacities Examination, determining Plaintiff could lift and carry five pounds maximum and sit for five minutes, and opined that she was "unable to return to her sedentary work full time or part time." AR at 335-36.

The ALJ gave Ms. Leaf's opinions "[l]ittle weight" as inconsistent with examinations showing full strength and normal gait. AR at 47. Normal muscle strength is a germane reason to reject extreme limitations such as lifting no more than five pounds. Plaintiff does not challenge the ALJ's findings but cites other clinical results, such as reduced range of motion and imaging showing degenerative changes. (Dkt. # 9 at 10.) These records do not contradict or otherwise undermine the ALJ's decision. The ALJ's findings of full strength and normal gait are supported by substantial evidence, and constitute a germane reason to discount Ms. Leaf's opinions.

        3.    *The ALJ Did Not Err by Discounting the Opinion of Lowell C. Finkleman, M.D.*

Plaintiff's treating physician, Dr. Finkleman, opined in May 2014 that Plaintiff was unable to perform full-time work. AR at 493. Dr. Finkleman filled out a Physical Capacities Evaluation form, opining Plaintiff could sit two hours and stand/walk three hours per day, and would need to alternate sitting and standing at will throughout the day. *Id.* at 500. She could occasionally lift up to ten pounds. *Id.*[1]

The ALJ gave Dr. Finkleman's opinions "[l]ittle weight" as inconsistent with Plaintiff's ability to sit four to five hours per day during her drive to Arizona. AR at 47. Plaintiff does not challenge the ALJ's reason, but argues Dr. Finkleman's opinions should have been given greater weight due to his long treatment relationship with her and the abnormal clinical findings in his treatment notes. (Dkt. # 9 at 9-10.) Plaintiff's arguments are beside the point. Conflict with a claimant's activities alone can "justify rejecting a treating provider's opinion." *Ghanim*, 763 F.3d at 1162. Plaintiff's ability to sit for at least four hours per day, several days in a row, clearly

---

[1] Additional statements from Dr. Finkleman are in the record but Plaintiff does not challenge the ALJ's assessment of them. *See* AR at 47.

contradicts Dr. Finkleman's limitation to two hours per day. Conflict with Plaintiff's activities was a specific and legitimate reason to discount Dr. Finkleman's opinions.

The ALJ did not err by discounting Dr. Finkleman's opinions.

### 4. Michael Wingren, M.D.

Treating physician Dr. Wingren wrote a letter in April 2017 referencing Ms. Leaf's mini Physical Capacities Examination and "concur[ring] with the opinions and findings therein." AR at 837. Dr. Wingren opined Plaintiff was "unable to sustain competitive work." *Id*.

The ALJ gave Dr. Wingren's opinions "some but limited weight" because the Physical Capacities Examination he relied on was inconsistent with frequent examination findings of "full strength, normal gait, and negative straight leg raise." AR at 47. Plaintiff does not challenge the ALJ's reason but argues Dr. Wingren as a treating physician should have been given more deference. (Dkt. # 9 at 11.) Plaintiff's argument misses the mark. The ALJ need only provide one specific and legitimate reason to discount a contradicted medical opinion. The Court will not reweigh the evidence, but is constrained to affirm an ALJ's decision as long as it is based on substantial evidence and free from legal error. Inconsistency with the medical evidence was a specific and legitimate reason to discount Dr. Wingren's opinions. *See Bayliss*, 427 F.3d at 1216.

The ALJ did not err by discounting Dr. Wingren's opinions.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 14th day of February, 2020.

*[signature]*

MICHELLE L. PETERSON
United States Magistrate Judge